I believe the record is pretty strong with regard to the issues in the case and the briefing, I think, has been pretty extensive on what the issues are. It's a very simple issue, really. It's a question of whether there's an issue of fact in regards to the valuation of the property value. And it's a question of whether there's a weighing of the evidence with regard to a third-party appraisal and a third-party offer. Well, Counsel, can I just jump right in? There has to be, I assume, or maybe I should put the question this way, is there a line? Let's say the two appraisals were 10 cents off. Would you still say there was an issue of fact? No, Your Honor, but that's not the issue here. Here what we have is an appraisal that is 31% lower than the offered price. And then there's a third-party offer, not an appraisal, a third-party offer that was made subsequent to the non-renewal of the franchise. So the issue is if the third-party offer is giving a minimum of equal weight to the appraisal, in other words, if the Court is not weighing the third-party offer higher than the appraisal, then all the case law says that this case should go to trial. I understand that there are different numbers. I think that the thing I'm struggling with is you have case law in this circuit that says at some point if the numbers are close enough, it's not an issue of fact anymore. And what I've been struggling with ever since I picked this case up is where do you – where is something, quote, approaching fair market value, close quote? Well, Your Honor, that is the question that we all have been struggling with. Also help us out. What's your solution? Well, the case law that's out there, I think that the highest price differential that the case law that's out there has addressed is 20%. I'm not so sure – 20% between what and what? 20% difference between an appraisal and the offer. Between the appraisal and the offer or between two appraisals? Between the appraisal and the offer. What is the percentage difference between the offer and the appraisal here? 31%. No, the offer was – I'm talking about the third party offer. Oh, that? It's a smaller – it's a much smaller percentage. Right. Now, you give no weight at all to the fact that a third party came in and offered $890,000 a month later. Well, it's not that I don't give any weight to it. What I'm saying is that you cannot give the third party offer more weight than the appraisal. Why is that? I mean, an appraisal is an estimate of what somebody will pay. We now have a proof of what somebody would pay. Why isn't the third party offer better evidence than just an estimate? A third party offer in the PMPA context is not better evidence than the appraisal because in the PMPA context, we have two separate procedures that have already been delineated by Congress where if there's a third party offer and the oil company gives the right of first refusal – You're not explaining to me why the third party offer isn't a better assessment of what the property is worth than an estimate. Well, it's an evidentiary matter. I mean, the third party offer is a piece of evidence that somebody can introduce in a trial and have a jury evaluate and give it whatever weight it needs. That's like saying a week before the election, we have a public opinion poll that's going to predict what the result will be. Then a week later, we have the result. Why isn't the result a more accurate assessment of what the property is worth? Well, that's for the jury to decide. No, that's what buyers and sellers decide. But that third party offer was, first of all, not consummated and it was made after the non-renewal had already taken place so the franchisee had no idea that that third party offer was even made until after the renewal. What difference does that make? Excuse me? What difference does that make? The difference that it makes is that a franchisee has to be able to predict or evaluate the bona fides of the offer at the time that the offer is made in order to decide what to do. Either he's going to accept the offer and close escrow or he's not going to accept the offer and challenge the amount of the offer. If he has no idea that there's even a third party offer being made, how is he to evaluate that? But aside from that, assuming that that wasn't true, which in this case it was, if the case is to go to trial, a jury can decide whether or not the third party offer should be given more weight than the appraiser. A jury can evaluate the testimony of the third party offeror and the appraiser and decide whether it's approaching fair market value. I don't understand that at all. How could the third party offer not be dispositive of what it's worth in the absence of some evidence, and there is no evidence here, that the offer wasn't a bona fide offer? Because third parties regularly can offer more than fair market value. For example, McDonald's is known for offering a lot more for a property than it's worth because it wants a piece of property. And that would be the case here. The point is that you cannot compare, in evaluating what Judge Fogle has addressed, what we're evaluating is the bona fides of ConocoPhillips' offer. And so to evaluate whether ConocoPhillips' offer approached fair market value, you have to look at the appraisal versus what ConocoPhillips offered. Because you're going to give the most weight, you're going to take the evidence in the best light to the plaintiff. And if you're going to do that, you have to look at the plaintiff's evidence. And so all the cases that Judge Fogle is referencing, or referring to, regarding this struggle between what should be the price differential between the franchisor's offer and the appraisal, all deal with appraisals. And they all deal with appraisals, not comparing two appraisals, but comparing an appraisal to the offer. And so if the appraisal has a certain price or a certain differential in value to the offer, then the case proceeds to trial. Well, all right. But just, you know, that is what those cases say. But the problem is, I think, the question of what fair market value is when it gets to the jury, if it goes to the jury, is a factual question. You look at all of the evidence, including activity where offers may have been made by third-party purchasers, right? I mean, if it becomes a factual inquiry for the jury, what was the fair market value of the franchise? You look at everything that bears on that, right? Look, that's exactly the case. The jury would then look at all of the evidence at the time of trial. But in summary judgment, we're supposed to take the evidence that's like. . . But, no, of course you are. But, again, I'll give you a silly example. Let's say you have an appraisal that is 80 percent below the offer. You go out and find somebody who will say anything in an appraisal. And the appraisal is facially unreasonable. And you have. . . Maybe it's a really popular franchise at a really popular intersection. And you have six or seven third-party offers that are all within 5 percent of the offer from the franchisor. You still. . . It's kind of a reasonable jury. That's the standard, right? Could a reasonable fact finder find in favor of the plaintiff on those facts? Well, if the appraiser qualifies as an expert and the appraiser submits an appraisal that withstands the test of Daubert, et cetera, then it comes into evidence. And the court, the trial court must look at the evidence in the best light to be. . . Well, I'm just trying to figure out where the line is. Because Rhodes and these other cases say you don't have to go to trial every time there's a difference. That's correct. And what Judge Cooper was struggling with is, well, how much of a difference does there have to be? And the first time she said, well, there's too much of a difference. And the second time she said there's not enough of a difference. But what we have to figure out in this case is, number one, what do you look at? What evidence do you consider? And then, number two, how much of a difference is enough to get you over the matter-of-law barrier? Well, the key is to look at the difference between the evidence that's most strongest for the plaintiff under summary judgment standards and the offer itself, not comparing offer to offer or the weaker appraisal or the weaker, or I should say weaker, but the evidence that's strongest to the defendant. Right. But there is a rule of reason, even on summary judgment. Right. And so what I'm hearing you say is, well, our appraisal was 31 percent below the offer from the franchise. Well, we're done. There can't be summary judgment in that case. And what Conoco is saying is, well, wait a minute. You have a third-party offer from which we, by all indications, was made in good faith. Why can't we look at all of it and conclude that the difference isn't that big? Because the court must look at the evidence that's strongest to the plaintiff under summary judgment. That's the end of the discussion, is the appraisal? Summary judgment, yes. That is the end of the discussion. And what Conoco is trying to say is that, well, because we have this third-party offer, you must give the third-party offer more weight than the appraisal. And I'm saying that's completely wrong, and there's no case for supporting that. Go ahead. Go ahead. No, no. The 31 percent is outside the range of any case in this circuit that says it's too close to matter. That's correct. All right. Okay. And the most recent case that was cited by the Conoco was the Annan case, where Judge Morrow looked at testimony from two appraisers, and the plaintiff's appraisal actually gave some testimony in that case that seemed to acknowledge that the competing appraisal was just as valid as the testimony of the plaintiff's appraiser. And so based on that, the court said, well, in that case, we're going to look at the appraiser of the competing appraiser to compare, to evaluate whether the value of Porteous Fair might be valued. In that case, the difference, I think, was 20. It was maybe 15 percent or something like that. But there is no case out there that says 31 percent is close enough to grant somebody judgment. So if we get to trial on this, do you anticipate the jury is going to be asked the question of what the fair market value is or just be instructed on the question of whether this approach is fair market value? The jury, I've tried one of these cases before, and the jury was instructed on evaluating whether the offer approached fair market value. And that's the jury instruction. Does the offer approach fair market value? And it's up to the jury to decide whether it does or doesn't. Well, I realize that's sort of how these cases have been tried, but really why isn't that a matter of statutory construction as opposed to a factual issue? A factual issue on fair market value I understand, but when something approaches fair market value, that's a fairly loose standard. Well, I agree, and that's how Congress drafted the PNPA. They wanted to leave some room there where if a franchisor is contemplating, because this is one of the ways that a franchisor can terminate or end a franchise relationship. Under the PNPA, a franchisor cannot simply end a franchise relationship when the franchise agreement expires. They must have certain grounds, and one of the grounds is that the franchisor decides to sell the property and give the franchisee an opportunity to buy it. So if the franchisor decides to sell it under a bona fide offer standard versus a right of refusal standard, the franchisor must come up with a number, with an offer. And instead of saying that that number should be fair market value, Congress said it should be a number that approaches fair market value. I understand that. And I think they did that. It's not going to be precise. I agree, but I think they did that to give some room to the franchisor so they don't have to redo every offer that they made. You have less than two minutes left. Can I ask you one thing? I just want to make sure I'm clear. Did you introduce any evidence to cast doubt on the Glenwood Development Company offer to argue that this was a McDonald's situation or anything like that? No, other than to argue that it shouldn't be considered because it was made long after the Mountain Mill took place, so anything afterwards is no longer relevant. Got you. Thank you. Thanks. Adam Friedenberg for ConocoPhillips Company. May it please the Court. The issue in this case, as Your Honors have recognized, is whether the Court may ever grant summary judgment where a franchisee disputes the bona fide offer but the market has subsequently confirmed the value of the property at issue. If the answer is yes, then the Court must affirm the judgment in this case. Why is that so? I mean, we're just talking about the variance rather than – I mean, the argument is we construe the evidence in the light most favorable to the plaintiff. The plaintiff produced evidence of a 30 percent variance. You produced other evidence. I don't think the – I think the answer clearly is under certain circumstances you get summary judgment, but why under this circumstance? The answer, Your Honor, is that some evidence is positive and other is not. We are not weighing the evidence. We're not calling into question the credibility of the plaintiff's appraisal, but what we're recognizing are the many cases, including this Court's decision in Ellis, 969 F. 2nd and 988, and the Northern District of Illinois' opinion in Ballas, which is at 622 F. 476, that fair market value is determined by the market. As the Court has commented, an appraisal seeks to guess how the market will behave. The market offer is the behavior of the market. So the rule is that if a market offer is dispositive and, therefore, the appraisal evidence is relevant. It's not given less credibility. It's simply not relevant once the market has confirmed the value. Whose burden is it to show that the – actually, I have two questions about the market. In this case, one was counsel's point that the Glenwood offer is after the fact, and second, that we don't know anything about that offer. We don't know whether it was made in good faith or not. Whose burden is it to establish that if you're ruling for summary judgment? Sure. First, the offer was made a few weeks after the fact, and the reason why it was not disclosed to the plaintiff or why it didn't move beyond the offer stage is that at the time of Glenwood's offer, Conoco was in contract with the plaintiff. Had Conoco accepted the Glenwood offer or moved forward on that offer, it would have been in breach of its contract with the plaintiff. So it immediately called Glenwood and put an end to the negotiation and said, we can't move forward on this. To answer the second question, we've submitted evidence that – Well, I understand why you would terminate the discussions with Glenwood, but why wouldn't you disclose that to the plaintiff when you know you're operating under the aegis of the act? There was no obligation to disclose it to the plaintiff, and there was no logical reason to do so. Conoco is a big company. I imagine it gets offers on many properties all the time. But if it's in contract with the buyer on a particular contract – on a particular property, it has no reason to expect that that transaction is not going to close. Is that because it was less than the purchase price that the buyer had agreed to pay? It was – there's no evidence in the record on this point, but I imagine it was because it was completely extraneous to the discussion. The parties had a binding contract that Mr. Fosley had represented to Conoco he intended to perform. So there was no logical reason why there would be any discussion of events after that fact when Conoco had already made a bona fide offer that Mr. Fosley had accepted. And then the second point having to do with is there not some type of – What I'm hearing you argue is that you should presume that the offer made on the market was made in good faith and at arm's length, even though it's a motion for summary judgment. We have submitted evidence that it was an arm's-length offer, that the offeror was ready and able to close on the offer had it moved forward. Given that evidence, I would argue that it is then the plaintiff's burden to contradict that declaration in whatever way it chooses to do so. And that was before the district court, that evidence about the Glenwood offer? The evidence was before the district court. The Glenwood offer was a disclosed document. The individual who signed the declaration authenticating it was a disclosed witness. The plaintiff could have taken any discovery he wanted with respect to Glenwood or Mr. Eisenberg, the declarant, and chose not to. The discovery cutoff was open at the time Conoco filed its motion, and there was no reason why plaintiffs even had decided tactically not to take the discovery earlier, why it could not have taken it after the motion was filed. Let me follow up on Judge Thomas' question about disclosing the offer. Your answer to him was, well, you were already in contract with Fosley. If I understand correctly, Fosley accepted your offer under protest. Is that right? He purported to do so. We disagree that it's possible to accept an offer under protest. Well, what do you mean he purported? Yes. He said he was. He was doing it under protest. He said what he said was that he was accepting the offer, he intended to buy the station, and that he intended at the same time to litigate whether the offer was bona fide. Okay. Why didn't that fact then require you to disclose the offer? Well, we did disclose it in the litigation. I mean at the time he was trying to buy the station. Because there was no statement from Mr. Fosley at that time that, notwithstanding his protest, that he did not intend to perform on the contract he had signed. In fact, he admits at deposition, and this is at page 98 to 100 of his deposition attached as an exhibit to my declaration, submitted in the support of motion, he admits that he accepted the offer with no intent to close, but didn't tell Conoco that he had no intent to close. So theoretically, assuming you can accept the offer under protest. Because he said he was going to litigate. Right. And so I guess I suppose it's not in the record, but it strikes me as odd that Conoco wouldn't disclose this offer. He says, well, I'm going to accept this now, but I plan to litigate the bona fide whether or not it's fair market value. Well, again, he certainly could have litigated the fair market value in theory. But there was no reason to expect that the contract would not close it. I don't think it's any different than the situation in which someone accepts an offer on their home and subsequently receives third-party offers after the fact. Once you've got a contract with a buyer, and that buyer is telling you he's going to perform on the contract without regard to whether there's going to be some litigation over the theoretical right to some refund of some portion of the purchase price. There was a binding contract at that point that plaintiff said he was going to perform under, and I see no reason why Conoco logically would have, and certainly legally it was not required to disclose the offer at that point. Let me change the topic for a second. Let's return for a second to a broader question, which is how much of a variance is allowable in order to grant summary judgment? And I'm talking between the – forget this case. But, I mean, let's assume for the sake of argument you've got a 30 percent variance in this case. And I know you dispute that. But why isn't that – why wouldn't that be enough to say that there's a genuine issue of material fact? Well, in an appropriate case, it may be. Were this, for example, simply a battle of competing appraisals, then a 30 percent spread might very well be sufficient to raise a tribal issue. We're not saying that any time – Do you have a position on what – how – what variance – how small the variance must be in order to grant summary judgment? It will depend on the facts of the particular case. Courts have gone as high as 20 percent. Eve Williams, who is Mr. Fosley's expert in this case, testified in the Annan case, as that court recognized, that a spread of as much as 20 percent is permissible. But certainly – But you say it depends on the facts of the case. That doesn't help me too much. I mean, what principles – what principles should we apply in determining how much of a variance is allowable? I think ultimately that is a question – I don't think the Court necessarily would say that 8 percent is per se reasonable, but 8.1 percent is per se unreasonable or triable. In this case, what you have – or in any case, what you have to do is take a look at all the various data points and determine whether a reasonable jury could find, in light of the various evidence of value, that the offer did not approach fair market value. And here what we've got is Glenwood saying it offered 890,000 but was prepared to pay as much as 20 percent more than that. You've got the offer Conoco made to its franchisee dead within that range at 980,000. And you then have 12 months later – and this is relevant, as other courts have recognized – 12 months later, a fourth party comes in and purchases the property for exactly the price Conoco offered. But you know, I think the plaintiff's argument is that under this peculiar statute, there are two options that Conoco would have. One is to go use the market, and therefore you use a right of first refusal. Or two, you approximate the market, and you do that with an analysis of what fair market value might be. And that therefore, under this peculiar statute, in fact, a fair market value might be different from a real offer. And that that's what Congress intended. And that seems to be the statutory construction argument being made. Those are the two options. The cases recognize, however, that even where the franchisor pursues the bona fide offer option, the ultimate determinant of what approaches fair market value is the value assigned to the property by the market. For example, this Court in Ellis has said that fair market value is exactly that. In Sandlin, the Tenth Circuit said that fair market value is the highest price that the market would bear. Those are bona fide offer cases, not right of first refusal cases. In the Herrara v. Conoco Phillips case, a case I litigated in the Northern District, Judge Zimmerman had a situation where, almost exactly identical to this one, the franchisor made an offer in 2003. A third party made a subsequent offer a few months later. A fourth party made another offer about eight or nine months after that. And Judge Zimmerman looked at the third and the fourth party offers and said, this is the evidence on fair market value, and therefore, no reasonable jury could find that the offer for the same price was not right. Well, you know, what you're saying is it's a case-by-case standard. And since I'm a district judge most of the time, that concerns me a little bit, because what I'm going to be doing is looking at data points, as you say, in each case. And in some cases, I'm going to look at the appraisal. In some cases, I'm going to be looking at offers, and I'm going to be looking at the details and the circumstances. And it sounds an awful lot like weighing of evidence. And the problem is when you get to the, well, no reasonable jury could find this, well, maybe no reasonable court of appeals is going to agree with me when the case comes up on appeal. You know, it's putting a lot of discretion in judgment in the hands of the trial judge rather than the jury. And is that what Congress intended? Well, courts, the district courts routinely grant summary judgment in PMPA cases, and appellate courts routinely affirm them. No, there aren't that many cases. There are some. Fair enough. The district court. We refer to all the cases I've had, but that's it. I'm sorry, what? We refer to all the cases I've had in PMPA. So I guess I'm routinely rejected. Okay. All two of them. Touche. But what I would say is it will depend on the facts of the case. And imagine, for example. You understand our problem, though. When you start talking about facts of the case, fact-driven, data points, all that says jury to me. And so what's, again? Not, I would argue, when you have market evidence that confirms the entire range of value. Again, the offer has to approach fair market value. The cases have said that that reflects a range of permissible prices. Here we've got market evidence that shows the range begins at $8.90, includes $9.80, and could go as high as $1,068,000. So if we had just the two appraisals, you would agree that's a triable case? Depending on the spread, yes. Okay. In this case, this spread, 30-some-odd percent, that would give you a trial. We have not argued otherwise. Okay. Now, the game-changer here is we have what appears to be a bona fide offer a month later. That's the difference that you're saying separates this case from the other cases. Do I have it? That is correct, Your Honor. Okay. The bona fide offer a month later, and then the third-party offer a month later, the fourth-party offer approximately 12 months later. Next question. Let me ask you sort of a real question, what's going on on the ground, real-life kind of thing. This happened in 2003, is it not? Yes. Who's in possession of the station now? Is he still operating the station? The plaintiff, obviously, is not. I believe the party to which Conoco sold the property has since sold it to a fifth party who may have sold it to a sixth, and my understanding is that each step in the road, the value appreciated. So some other person besides Fosley is operating the station, owns the station now? Correct. Yes. What exactly are we fighting about here, then? Well, that's an excellent question, Your Honor. I don't know at this point. The plaintiff presumably wants some refund of a purchase price he never paid. So I don't know at this point what the plaintiff would have a right to seek. He was offered multiple opportunities to buy the station, so when he claimed for damages, he completely failed to mitigate. How is it that the station was not sold to him if you had a contract with him? Because he breached the contract. He said, I'm not going to perform the contract? Correct. And then he testified at deposition that I never intended to buy the station at that price. I only bought it so Conoco couldn't market. Okay. And I would get back to your question, Your Honor. The rule that the plaintiff articulates, which is really no rule at all, would leave district courts in the position of finding a triable issue if, for example, Conoco makes an offer for $980,000 and plaintiff obtains an appraisal that says the site's only worth $300,000. If Mr. Fosley, instead of accepting the offer in bad faith, had rejected the offer, Conoco had then accepted a third-party offer for $980,000 that same day, under plaintiff's rule, we would still have a triable issue. Well, yeah, that's an extreme position. But I think I at least am struggling with is there a way to do a workable rule in cases like this or do you have to look at each case individually? I would argue, Your Honor, that it's not all that extreme a position given the facts of this case here. What we have is a third party a few weeks after the offer saying the value is $890,000 to $1,068,000. And he's not saying this is what I think the property is worth. It's what I'll pay. What I'll pay. Right. And under Ellis and under Arara and under the many other cases we've cited, I would argue that that is dispositive. Thank you, counsel. Thank you, Your Honor. Your Honors. You've got about a minute. 17. I'll be brief. To address Judge Fogel's question, Judge Morrow did a very thorough analysis of this issue in the Tamil versus Echolau versus Shell case, which is attached to the request for judicial notice. And I think she summarizes the law pretty well, even though it's a little bit of an older case and there's cases since then. And with regard to what's going on right now, Fosley, the plaintiff in this case, filed a recorded list pendants on the property. And ConocoPhillips has been indemnifying all the subsequent buyers with regard to the property. So basically you're talking about damages. There's damages and possibly some injunctive relief. We don't know at this point. Injunctive relief of what sort? Well, maybe. You can try to oust the buyer. It's possible. In today's market, with this station, you never know what the buyer may – the buyer may not even want the property. It's possible. But that's just a more real-world scenario. But as far as the rest of the issues in the case, I believe Judge Thomas really hit the nail on the head. We have two separate systems here. There's a right of first refusal system and a bonafide offer system. And had Mr. Fosley not accepted the offer, ConocoPhillips, with regard to the third-party offer, they'd have to argue if you give a right of first refusal to Mr. Fosley for that amount. But that never came to fruition, which is why we're arguing that subsequent offers – subsequent to the appraisal are really irrelevant at this point. We have to evaluate the bonafides at the time that the offer was made. Thank you, Counsel. Thank you. The case will certainly be submitted. Thank you both for your arguments. Very helpful as far as – and we will issue a decision. And, of course, it doesn't bear on our decision one way or the other, but if you want to use the services of the circuit mediator, they're certainly available to you to settle the remaining issues in this case. Thank you. The next case on the oral argument calendar is Cellar Agency Counsel v. Kennedy Center for Real Estate Education.
judges: Fogel, Thomas, Silverman